# IN THE COURT OF APPEALS OF IOWA

No. 19-1387
Filed January 9, 2020

**IN THE INTEREST OF P.C.,**
**Minor Child,**

**T.C., Father,**
   Appellant.

_____

Appeal from the Iowa District Court for Clay County, Andrew Smith, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Christopher D. Sandy of Sandy Law Firm, Spirit Lake, for appellant father.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Shawna Ditsworth, Spirit Lake, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

A father appeals the termination of his parental rights, claiming there is not sufficient evidence to support the court's finding that the child cannot be returned to him at present. *See* Iowa Code § 232.116(1)(h)(4) (2019).[1] We affirm.

P.C. was born in August 2017 and came to the attention of the department of human services (DHS) in October following a report that the father was intoxicated and got into an argument with the mother. During the argument, the father kicked the child seat in which the child was sitting. An ensuing child abuse investigation resulted in a founded child abuse assessment against the father for denial of critical care and failure to provide proper supervision.

On January 18, 2018, P.C. was adjudicated a child in need of assistance (CINA). On May 4, after the mother's medical issues left her unable to care for P.C., the child was placed with the maternal grandparents. The maternal grandparents also care for P.C.'s older half-sibling, whom they adopted in 2015.[2]

The father has been diagnosed with post-traumatic stress disorder, depression, borderline personality disorder, attention deficit hyperactivity disorder, and social anxiety. He takes a number of mental-health medications. In the fall of 2018, he was hospitalized for paranoia. In November or December, he started participating in the Assertive Community Treatment (ACT) program. The ACT program provides intensive mental-health in-home services, sending service providers into the father's home to assist him with therapy and medication

---

[1] The mother's parental rights were also terminated. She does not appeal.
[2] The mother had another child with another man during the course of these proceedings. That child is also in the care of the maternal grandparents.

management. Since commencing that program, the father has been able to obtain part-time employment.

On July 19, 2019, a permanency and termination-of-parental-rights hearing was held. At the time of the termination hearing, the child had been out of the parents' custody for fourteen months. The father had supervised visits with P.C. once a week for two hours. The father was working as a cook part-time in an establishment where he had been employed for about two and a half months. He was living with his mother in a two-bedroom home. He does not pay rent to her. He reports having a bed, clothes, diapers, and toys for the child, but no home study has been requested or conducted at this home. The father had checked into potential daycare and testified that it would be available but was unsure of the cost.

On August 5, the juvenile court entered an order terminating the father's rights pursuant to Iowa Code section 232.116(1)(h). The father does not contest that the child is under three years of age, has been adjudicated CINA, and has been out of the parents' custody for more than six consecutive months. *See* Iowa Code § 232.116(1)(h)(1)–(3). However, the father argues there is not clear and convincing evidence the child cannot be returned to him at present. *See id.* § 232.116(1)(h)(4).

On our de novo review, *see In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018), we agree with the juvenile court that the child cannot be returned to the father's custody at present without risk of adjudicatory harm. We adopt the following findings and conclusions of the trial court:

> It is telling that each parent testified the other cannot provide a safe and appropriate home for [P.C.], but that they, themselves, can do

so.  The record reflects that neither parent can provide an appropriate home at this time. . . .

. . . [T]he record is clear that [P.C.] cannot be placed in [the father's] home at this time.  While [he] is working, it is part time and there is no showing that he can financially provide for [P.C.]  No home study has been conducted of his mother's home[, where he is currently residing].  While [the father] has a driver's license, he does not have a vehicle and relies upon his mother for transportation.  This was one of the reasons given for his failure to take full advantage of the additional visitation offered by the maternal grandparents.  Since [P.C.'s] removal, [the father] has only had two visits with [P.C.] which were not fully supervised.

Most importantly, neither parent presents evidence of sufficient stability to demonstrate that [P.C.] could be returned to their custody now, or in the near future.  The supervisor and providers for the ACT program report that both parents show mental stability.  Their actions tell a different story.

The DHS social worker testified the child was in need of permanency and was bonded to and happy living with the grandparents and two half-siblings.  The child's guardian ad litem recommended termination of parental rights.  Because there is clear and convincing evidence supporting termination under section 232.116(1)(h), termination is in the child's best interests, and no mitigating factor exists to avoid termination, we affirm.

**AFFIRMED.**